UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

RAYMOND BELFONT,

                     Defendant.
------------------------------------------------------------X

**MEMORANDUM & ORDER**
17-CR-380 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On January 19, 2018, Raymond Belfont ("Defendant") pled guilty to Count One of a two-count indictment before Magistrate Judge James Orenstein. Count One charges Defendant with importation of cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(B)(ii). On May 24, 2018, this Court accepted Defendant's guilty plea before a United States Magistrate Judge. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to time served and payment of a $100.00 special assessment.

## BACKGROUND

On July 14, 2017, the United States filed an Indictment charging Defendant with one count of Importation of Cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(B)(ii), a Class B felony, and one count of Possession of Cocaine with Intent to Distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(ii)(II), also a Class B felony. ECF No. 5 ("Indictment"). On January 19, 2018, Defendant pled guilty to Count One of the Indictment before Magistrate Judge James Orenstein, who recommended that this Court accept Defendant's guilty plea. Transcript of Plea Hearing at 33, ECF No. 16. On May 24, 2018, after reviewing the transcript of Defendant's plea allocution, this Court accepted Defendant's guilty plea to Count One of the Indictment in a written order. ECF No. 19.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

1

## DISCUSSION

### I. Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing a sentence in a criminal case. If and when a district court chooses to impose a sentence outside of the United States Sentencing Commission Guidelines Manual (the "Guidelines" or "Sentencing Guidelines") range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

### II. Analysis

#### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born in Aquin, Haiti on March 8, 1960, to the marriage of Eneçoine Belfont and Eliez Nogas, who are both deceased. Presentence Investigation Report ("PSR") ¶ 26, ECF No. 17. Defendant is a citizen of Haiti. *Id.* ¶ 25. Defendant was issued a B1/B2 visa to enter the United States in September 2013, which is set to expire in September 2018. *Id.* ¶ 5.

Defendant reported having a good relationship with his father, but because his mother died when he was young, he knew little about her. *Id.* ¶ 26. Defendant was raised by his father's domestic partner who died in 2008, but with whom he reported having a good relationship prior to her death. *Id.*

Defendant was raised in Haiti under adequate financial circumstances for that country in the 1960s and 1970s. *Id.* ¶ 27. Defendant reported having six siblings, three full siblings from his parents' marriage and three paternal half-siblings. *Id.* Two of his brothers are deceased. *Id.* One of Defendant's sisters resides in Miami, Florida, and Defendant reported last speaking to her in 2014. *Id.* Defendant has three brothers who reside in Haiti. *Id.* He reported having good relationships with his siblings, but Defendant was unclear if they were aware of his current legal situation. *Id.*

Defendant relocated from Haiti to France in 1979 for employment opportunities. *Id.* ¶ 28. Defendant returned to Haiti in 1987, and then went back to France from 1990 to 1996. *Id.* He returned to Haiti in approximately 1996, and lived in Haiti until 2004. *Id.* ¶ 31. Defendant lived in France from 2004 to 2006, then in Haiti in 2007, and then in France from 2008 to 2009, returning to Haiti in 2010. *Id.* Defendant reported that he will return to his address of record in Port-au-Prince, Haiti when he is released from custody. *Id.* He married Elmita Antoine in Paris in 1992, but she died in April 2014 of kidney disease. *Id.* ¶ 28. Their marriage produced four children, all of whom reside in Paris, France. *Id.* Defendant reported having good relationships with his children, who are aware of his arrest and conviction for the instant offense, and who remain supportive. *Id.* For several years in the late 1980s and early 1990s, Defendant maintained a consensual relationship with Enid Emeland in Haiti, although the couple never lived together. *Id.* ¶ 29. That relationship produced a son who resides in Paris, with whom

Defendant reported having limited contact because Ms. Emeland relocated to France with their son when the son was five years old. *Id.*

Since 2000, Defendant has maintained a domestic partnership with Ena Lamy, with whom Defendant reported having a very good relationship. *Id.* ¶ 30. She is aware of his arrest and conviction for the instant offense, and remains supportive. *Id.* The couple has two daughters who live with their mother in Haiti and who are in good health. *Id.*

Defendant reported being diagnosed with high blood pressure while incarcerated. *Id.* ¶ 34. He reported no history of mental or emotional problems. *Id.* ¶ 35. He described himself as "traumatized" by his current situation, and has been emotional on several occasions and during court appearances, as reported by defense counsel. *Id.* Defendant reported having met with a psychologist on one occasion. *Id.* Defendant reported no history of alcohol or substance abuse; Defendant stated he does not drink. *Id.* ¶ 36.

Defendant attended Ecole Nationale in Aquin, Haiti, but did not graduate. *Id.* ¶ 37. He was enrolled in school from the age of six until seventeen, when he dropped out. *Id.* Defendant does not speak English; his primary language is Haitian Creole. *Id.* ¶ 38. Defendant reported being employed in construction for nineteen years. *Id.* ¶ 40. He reported being self-employed and earning the equivalent of $51.00 per month. *Id.* Defendant has also worked as a truck driver and delivery driver in France and Haiti; he drove trucks when he had no construction jobs lined up. *Id.* Defendant stated to Probation he has always worked to financially support himself and his family. *Id.*

Defendant has no known prior arrests or convictions. *Id.* ¶¶ 19-24. The instant offense arises from Defendant having knowingly and intentionally imported 500 grams or more of a substance containing cocaine into the United States. *Id.* ¶¶ 2-5; Indictment at 1. Specifically, on

June 25, 2017, Defendant arrived at John F. Kennedy Airport in Queens, New York, aboard a flight from Port-au-Prince, Haiti. PSR ¶ 2. Customs and Border Protection ("CBP") officers selected Defendant for an examination, and Defendant presented a suitcase and accompanying key for inspection. *Id.* ¶¶ 2-3. CBP officers observed that the bottom of the suitcase was unusually thick and felt heavy even after being emptied. *Id.* ¶ 3. The officers took Defendant to a private room where an additional examination revealed 1.98 net kilograms of cocaine, as later verified by Drug Enforcement Administration lab reports. *Id.* Defendant was arrested by special agents from Homeland Security Investigations, and Defendant subsequently admitted to his participation in the cocaine importation conspiracy. *Id.* ¶ 4. Defendant has been incarcerated since his arrest on June 25, 2017. *Id.* ¶¶ 32, 39.

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The Court's sentence punishes Defendant for violating federal law and is crafted to deter him and others from engaging in similar criminal activity in the future. The Court also takes into account that Defendant is subject to an Immigration and Customs Enforcement detainer and will likely be deported. PSR at 1; Defense Sentencing Memorandum ("Def. Memo") at 5, ECF No. 21.

## C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant was convicted of one count of Importation of Cocaine in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(B)(ii), for which he faces a minimum term of imprisonment of five years and a maximum term of imprisonment of forty years. 21 U.S.C. § 960(b)(2)(B)(ii). However, if the Court determines Defendant has satisfied all of the mitigating factors listed in 18 U.S.C. § 3553(f)(1)-(5), then "the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence." 18 U.S.C. § 3553(f). Probation and the Government agree and have advised this Court that Defendant has satisfied the required criteria. PSR ¶ 43; Government Sentencing Memorandum ("Gov't Memo") at 1, ECF No. 20. Title 21, section 960(b)(2)(B) also provides for a statutory minimum term of supervised release of four years and a maximum term of supervised release of life; however, if the Court determines Defendant has satisfied all of the mitigating factors listed in 18 U.S.C. § 3553(f), the mandatory minimum term of supervised release does not apply. PSR ¶ 45; *see, e.g.*, *United States v. Gil*, 15-CR-294, 2016 WL 1048032, at *2 & n.1 (E.D.N.Y. Mar. 11, 2016) (Kuntz, J.) (explaining supervised release not mandatory for a defendant convicted under 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(3) "[b]ecause Defendant has satisfied all of the mitigating factors listed in 18 U.S.C. § 3553(f)"). In this situation, the authorized term of supervised release would be not more than five years. 18 U.S.C. § 3583(b)(1). Defendant also faces a maximum fine of $5,000,000, 21 U.S.C. § 960(b)(2)(B), and a mandatory special assessment of $100, 18 U.S.C. § 3013. Defendant is ineligible for probation because it is expressly precluded by statute. 21 U.S.C. § 960(b)(2)(B).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." 18 U.S.C. § 3553(a)(4)(A).

The Guideline for violations of 21 U.S.C. § 952(a) is United States Sentencing Commission Guidelines Manual § 2D1.1, which directs the Court to apply the greatest applicable base offense level.[1] USSG § 2D1.1(a)(5) applies in Defendant's case, which directs the Court to apply the applicable base offense level indicated in the drug quantity table located at USSG § 2D1.1(c). According to the PSR, Defendant is accountable for 1.98 net kilograms of cocaine. PSR ¶¶ 3, 9. Pursuant to USSG § 2D1.1(c)(8), offenses involving at least 500 grams but less than 2 kilograms of cocaine correspond to a base offense level of 24. Therefore, the PSR calculates a base offense level of 24.

Pursuant to USSG § 2D1.1(b)(17), if Defendant meets the "safety valve" criteria set forth in USSG § 5C1.2(a)(1)-(5) (which are the same factors set forth in 18 U.S.C. § 3553(f), *see* Background Note to USSG § 5C1.2), Defendant is entitled to a 2-level decrease. Probation and the Government agree and have informed this Court that Defendant has satisfied the required criteria. PSR ¶ 10; Gov't Memo at 1-2. Accordingly, the PSR calculates a 2-level reduction.

Because Defendant was a minimal participant in the offense since he acted only as a courier in the drug smuggling scheme, a 4-level decrease is warranted pursuant to USSG § 3B1.2(a). *See* Application Note 4 to the Commentary to USSG § 3B1.2 (stating the 4-level

---

[1] Pursuant to USSG § 1B1.11(a), the 2016 version of the Guidelines—which is the Guidelines Manual in effect on the date of Defendant's sentencing—is used here.

reduction applies to defendants "who are plainly among the least culpable of those involved in the conduct of a group"); PSR ¶ 12; Gov't Memo at 2.

Defendant has demonstrated acceptance of responsibility for the offense and notified the Government in a timely manner of his intention to enter a guilty plea. Accordingly, the offense level is decreased by 3 levels pursuant to USSG §§ 3E1.1(a) & (b).

Taking into account these adjustments, all parties calculate a total offense level of 15. PSR ¶ 18; Gov't Memo at 2; Def. Memo at 1. However, USSG § 5C1.2(b) provides that "[i]n the case of a defendant (1) who meets the criteria set forth in subsection (a); and (2) for whom the statutorily required minimum sentence is at least five years, the offense level applicable from Chapters Two (Offense Conduct) and Three (Adjustments) shall be not less than level 17." *See, e.g., United States v. Aispuro*, 15-CR-73, 2015 WL 7281641, at *2 (E.D.N.Y. Nov. 17, 2015) (Weinstein, J.) ("The Guidelines provide that, where a defendant who meets safety valve requirements would otherwise face a statutory minimum of at least five years, the offense level shall not be less than 17." (citing USSG § 5C1.2(b)). The statutory minimum term of imprisonment pursuant to 21 U.S.C. § 960(b)(2)(B)(ii) is five years, and as previously described, the Government and Probation agree Defendant has satisfied the five safety valve provisions of USSG § 5C1.2(a).

Accordingly, Defendant's total offense level is 17. Given a total offense level of 17 and a criminal history category of I,[2] the Guidelines suggest a term of imprisonment between 24-30 months. USSG ch. 5, pt. A. The Guidelines further recommend a term of supervised release of

---

[2] Defendant has no known prior convictions and therefore has a criminal history score of zero and a criminal history category of I. PSR ¶¶ 20-21.

between two and five years, USSG § 5D1.2(a)(1) & Application Note 2;[3] a fine of between $10,000 and $5,000,000, *id.* §§ 5E1.2(c)(3) & (c)(4); and payment of the costs of prosecution as required by statute, *id.* § 5E1.5. Defendant is ineligible for probation under the Guidelines because it is expressly precluded by statute. *See id.* § 5B1.1(b)(2).

E. **Pertinent Policy Statement(s) of the Sentencing Commission**

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). The court has considered the policy statement located at USSG § 5K2.12, which provides:

> If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may depart downward. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions, on the proportionality of the defendant's actions to the seriousness of coercion, blackmail, or duress involved, and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

In his sentencing submission, defense counsel states Defendant purchased his plane ticket for the June 25, 2017 trip to the United States in advance with his own money for the purpose of visiting a friend living in Connecticut. Def. Memo at 2, 4. Defense counsel emphasizes Defendant did not set out to smuggle drugs into the United States and only did so because he was threatened with a gun to take the suitcase containing cocaine after he initially refused. *Id.* at 2, 4.

---

[3] Pursuant to USSG § 5D1.2(c) and accompanying Application Note 6, if there is a statutory minimum term of supervised release, the recommendation under the Guidelines is modified to reflect the statutory minimum. However, as explained *supra*, the statutory minimum term of supervised release of four years otherwise applicable for violations of 21 U.S.C. § 960(b)(2)(B) does not apply here. Furthermore, if the defendant is a deportable alien with an immigration detainer as is the case here, *see* PSR at 1 & Def. Memo at 5, the Guidelines do not recommend a term of supervised release unless it is mandated by statute or otherwise warranted based on facts of the particular case. USSG § 5D1.1(c) & Application Note 5.

## F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In considering the other six § 3553(a) factors, the Court's sentence sufficiently avoids unwarranted sentence disparities.

## G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor, which requires the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is not applicable in Defendant's case, *see* 18 U.S.C. § 3663.

## CONCLUSION

A sentence of time served and payment of the $100.00 mandatory assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2). The Court expressly adopts the factual findings of the Presentence Investigation Report, ECF No. 17.

SO ORDERED.

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: June 4, 2018
      Brooklyn, New York